IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHIYODA GRAVURE CO., LTD. AND CHIYODA EXPRESS CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>CHIYODA AMERICA, INC., currently a/k/a Cosmopolitan Graphics Corporation, and JOHN SEIJUN SATO,<br><br>Defendants. | COURT NO.<br><br>CIVIL ACTION |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

NOW COME the Plaintiffs, Chiyoda Gravure Co., Ltd. ("Chiyoda Gravure"), and Chiyoda Express Co., Ltd. ("Chiyoda Express"), through their undersigned attorneys, and for

their Complaint for Declaratory Judgment and Injunctive Relief against Defendants, Chiyoda America, Inc., currently a/k/a Cosmopolitan Graphics Corporation ("Chiyoda America"), and John Seijun Sato ("John Sato"), state as follows:

## PARTIES

1. Plaintiff, Chiyoda Gravure, is a joint-stock corporation formed on December 11, 1948, under the laws of Japan for the purpose of engaging in the printing business. Chiyoda Gravure's principal place of business is located at 1-5-14 Osaki, Shinagawa-ku, Tokyo, Japan. Chiyoda Gravure contends that Chiyoda America is its wholly-owned subsidiary. Chiyoda Gravure further contends that it owns 99 percent of the shares of a non-party, Chiyoda Europa, N.V. ("Chiyoda Europa"), which is a subsidiary of Chiyoda Gravure with its principal place of business located at 3600 GENK, Henry Fordlaan, Belgium.

2. Plaintiff, Chiyoda Express, is a joint-stock corporation formed on May 20, 1975, under the laws of Japan for the purpose of engaging in the shipment of printing materials. Chiyoda Express' principal place of business is located at 1-5-14 Osaki, Shinagawa-ku, Tokyo, Japan. Chiyoda Express is a wholly-owned subsidiary of Chiyoda Gravure. Chiyoda Express contends that it is a 1% owner of Chiyoda Europa.

3. Defendant, John Sato, is a resident of Pennsylvania. John Sato is currently acting as the President of Chiyoda America. John Sato formerly was a Director of Chiyoda Gravure and Chiyoda Express.

4. Defendant, Chiyoda America, is a Pennsylvania corporation with its principal place of business located at 378 Thousands Oaks Blvd., Morgantown, Pennsylvania. Chiyoda America is engaged in the printing business in the United States.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(2) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a foreign state and citizens of a State.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(1) and (3).

## NATURE OF THIS ACTION

7. This is an action for declaratory judgment pursuant to 28 U.S.C. §2201, for the purpose of preserving the assets of Chiyoda Gravure located here in the United States while the actual questions and controversies between the parties are determined, as set forth below, in litigation currently pending in Japan (the "Japanese Litigation"). Plaintiffs also seek such further necessary and proper relief pursuant to 28 U.S.C. §2202.

8. As set forth in more detail below, a similar declaratory judgment action, as well as a claim for monetary damages, regarding the questions and controversies between the parties is pending in Japan. Specifically, plaintiffs allege in the Japanese Litigation that John Sato, under Japanese law, wrongfully and illegally obtained ownership in Chiyoda Gravure's subsidiaries, Chiyoda America and Chiyoda Europa. Despite John Sato's wrongful and illegal actions, Chiyoda Gravure contends that Chiyoda America and Chiyoda Europa are in fact its wholly owned subsidiaries, and the Japanese Litigation seeks monetary damages as well as a determination that Chiyoda Gravure, as opposed to John Sato, is the rightful owner of Chiyoda America and Chiyoda Europa.

9. In addition to the Japanese Litigation, Chiyoda Gravure has filed a similar declaratory judgment action in Belgium alleging that John Sato, under Japanese law, wrongfully and illegally obtained ownership in Chiyoda Europa ("Belgian Litigation"). As set forth in more

-2-

detail below, the court in the Belgian Litigation has issued an injunction preserving the assets of Chiyoda Europa pending the outcome of the Japanese Litigation and appointing an independent mandatory ad hoc director with authority over the operation of Chiyoda Europa.

10. This action seeks injunctive relief here in the United States, essentially the same as the injunction entered in the Belgian Litigation, seeking to protect Chiyoda Gravure's interests in Chiyoda America pending the outcome of the Japanese Litigation.

## COUNT I – CLAIM FOR INJUNCTIVE RELIEF

11. John Sato is the third son of Hiroo Sato, the founder of Chiyoda Gravure and a non-party company, Shinko Kigyo Co., Ltd. ("Shinko Kigyo"). John Sato's two brothers are Hisayoshi Sato, who currently serves as a Director of Chiyoda Gravure and Shinko Kigyo, and Yoshiyasu Sato, who currently serves as an advisor to Chiyoda Gravure and a Director of Shinko Kigyo.

12. Prior to 2000, the three Sato brothers owned approximately equal shares of Chiyoda Gravure and Shinko Kigyo. At the desire of their father, Hiroo Sato, the three brothers were to build up and expand the two companies. However, after John Sato obtained the position of Representative Director of the two companies, he excluded his two older brothers from the management of the companies. As a result, in 2000, Hisayoshi Sato and Yoshiyasu Sato brought a lawsuit against John Sato in Japan. That lawsuit was eventually settled in July 2002 and the shares of Chiyoda Gravure and Shinko Kigyo were redistributed, with each brother owning different amounts of the shares of the two companies. Nonetheless, for all practical purposes, the two companies had the same shareholder structure and were essentially family corporations of the Sato family.

13. As of December 2002, John Sato continued as the Representative Director of Chiyoda Gravure and Shinko Kigyo as well as Chiyoda Express. However, after John Sato orchestrated a series of self-interested and illegal activities under Japanese law, and fled to the United States, he was removed as the Representative Director of these three companies.

14. At the general shareholders meeting of the three companies held on December 20, 2002, the executive officers were replaced with Hisayoshi Sato, who became a Representative Director of both Chiyoda Gravure and Shinko Kigyo, and his son, Hiroyoshi Sato, who became a Representative Director of Chiyoda Gravure and Chiyoda Express.

15. Prior to December 20, 2002, John Sato, with the cooperation of certain other members of the management of Chiyoda Gravure and Shinko Kigyo, engaged in a series of transactions that Plaintiffs contend, both in the Japanese Litigation and the Belgian Litigation and now in this Complaint, were illegal and improper under Japanese law. These transactions were conducted unbeknownst to John Sato's two brothers, Hisayoshi Sato and Yoshiyasu Sato.

16. Specifically, John Sato orchestrated a series of intra-company transactions between the sister companies Chiyoda Gravure and Shinko Kigyo that were to the detriment of the two companies and to the direct benefit of John Sato.

17. First, John Sato "sold" his shares of Shinko Kigyo to Chiyoda Gravure for 640,000,000 Yen.[1] He then "purchased" all of Chiyoda Gravure's shares in Chiyoda America for 61,750,000 Yen, and all of Chiyoda Gravure's shares of Chiyoda Europa for 1,956,240,000 Yen. He also "purchased" a golf membership owned by Chiyoda Gravure for 18,900,000 Yen.

---

[1] For purposes of consistency with the complaint filed in Japan, Plaintiffs have referred to all monetary amounts in Yen. At the current exchange rate, as of January 20, 2006, $1 equals 115.42 Yen. Accordingly, 640,000,000 Yen is approximately $5,544,966.

-4-

18. As a result of those transactions, John Sato owed Chiyoda Gravure 1,396,890,000 Yen (2,036,890,000 Yen, for the purchase of Chiyoda America, Chiyoda Europa, and the golf membership, less the 640,000,000 Yen from the sale of the Shinko Kigyo shares) plus 376,000,000 Yen from an outstanding loan he had received previously from Chiyoda Gravure for a total of 1,772,890,000 Yen.

19. However, instead of paying Chiyoda Gravure the amount that was owed for the transfer of the assets of Chiyoda America, Chiyoda Europa and the golf membership to himself, John Sato "sold" his shares in Chiyoda Gravure to Shinko Kigyo for 2,150,500,000 Yen and used the proceeds of that "sale" to eliminate not only the debt owed to Chiyoda Gravure but also an outstanding loan of 79,846,162 Yen that he previously had obtained from Shinko Kigyo. In addition, because the "sale" amount of his shares of Chiyoda Gravure to Shinko Kigyo was more than the amount he owed to Chiyoda Gravure, John Sato also had Shinko Kigyo pay him the difference in cash of 297,763,838 Yen.

20. In essence, John Sato utilized his position in Chiyoda Gravure and Shinko Kigyo to: (1) orchestrate a sale of his shares of Chiyoda Gravure and Shinko Kigyo back to those companies at an unfairly high price; (2) purchase all of the shares of Chiyoda America and Chiyoda Europa held by Chiyoda Gravure in a form whereby the purchase price was set off against the proceeds from the sales of the Chiyoda Gravure and Shinko Kigyo shares that he owned; (3) eliminate loan obligations that John Sato owed to Chiyoda Gravure and Shinko Kigyo; and, (4) obtain the balance remaining after the foregoing calculation in the form of cash from Shinko Kigyo.

21. As a result of these transactions, Chiyoda America and Chiyoda Europa became the personal companies of John Sato, the debts of John Sato owed to Chiyoda Gravure and

-5-

Shinko Kigyo were completely eliminated, and John Sato obtained a large amount of cash from Shinko Kigyo. John Sato then resigned his position as Representative Director of Chiyoda Gravure, Chiyoda Express and Shinko Kigyo, and moved to Pennsylvania.

22. In orchestrating these transactions, John Sato acted as both a Director of the seller and as Director of the purchaser. This constituted a conflict of interest on the part of John Sato, and according to Japanese law, any transfer in which there is a conflict of interest requires the approval of the Board of Directors of the company or companies involved. (See English translation of Opinion of Tadahiko Fukuhara, Professor of Law, Chuo Law School, attached as Exhibit A).

23. There was no legally valid approval of these transactions by the Board of Directors of Chiyoda Gravure. Indeed, John Sato used his position to mislead the Directors of Chiyoda Gravure into believing that the aforementioned transactions had been properly completed with the approval of the soon-to-be-newly appointed Directors, Hisayoshi Sato and Hiroyoshi Sato.

24. These transactions were intended for the sole benefit of John Sato to the prejudice of Plaintiffs.

25. After these transactions were discovered by Hisayoshi Sato and Hiroyoshi Sato in December of 2002, they sent a letter to John Sato on January 3, 2003, advising him that the transactions were immediately revoked and the contracts regarding the transfer of shares of Chiyoda America and Chiyoda Europa to John Sato were null and void. As a result, Chiyoda Gravure is the only legal shareholder of Chiyoda America and Chiyoda Europa.

**Japanese Litigation**

26.     As set forth above, on February 14, 2005, Chiyoda Gravure and Chiyoda Express filed the Japanese Litigation in the Tokyo District Court against John Sato (and others) seeking damages stemming from the transactions engaged in by John Sato as well as a declaration that Chiyoda Gravure is the 100% owner and shareholder of Chiyoda America (A copy of the English translation of the Complaint filed in Japan is attached as Exhibit B, pp. 1-3).

27.     The Japanese Litigation is ongoing. Several court hearings have been held and with the assistance of the presiding judge, the parties are currently in settlement negotiations. During settlement conferences on November 24, 2005 and again on January 16, 2006, the judge suggested that, in negotiating specific terms of settlement, the parties assume that the series of self-interested transactions orchestrated by John Sato had never taken place. As part of the Japanese Litigation, Plaintiffs have obtained court orders preliminarily attaching certain assets of John Sato. (Copies of the Attachment Orders (with English translations) are attached as Exhibit C).

**Belgian Litigation**

28.     In addition to filing the Japanese Litigation, plaintiffs have also filed litigation in Belgium seeking, among other things, damages relating to the transactions involving Chiyoda Europa as well as a declaration that Chioyda Gravure is the 100% owner of Chiyoda Europa. (A copy of the Complaint filed in Belgium (with English translation) is attached as Exhibit D).

29.     After both parties made written submissions and the Court held a hearing on May 9, 2005, the Belgian Court ordered:

1) John Sato and Chiyoda America not to sell or in any form encumber the shares of Chiyoda Europa pending a final decision on the merits of the ownership of the shares in the Japanese Litigation unless the parties reach an agreement; and ordered a EUR 1,000,000 penalty per violation of this order;

2) The appointment of an independent, mandatory ad hoc Director to keep the shareholders' registry of Chiyoda Europa; to convene a Board of Directors of Chiyoda Europa, to set the agenda and to preside over the Board; to cast the deciding vote in the event of a tie vote by the Board; and, to convene and preside over the general meeting of shareholders of Chiyoda Europa;

3) That the mandatory ad hoc Director be given access to the offices of Chiyoda Europa as well as to the company's books and administrative records; and,

4) Chiyoda Europa to pay the costs of the mandatory ad hoc Director.

(An English translation of the Belgian Court Order is attached as Exhibit E).

30. There exists an actual controversy between Plaintiffs and Defendants within the jurisdiction of this Court, and the jurisdiction of the Japanese court, as to the true ownership of Chiyoda America.

31. In the event that Defendants are allowed to continue operating Chiyoda America as if it is their own, Plaintiffs will sustain immediate and irreparable injury.

WHEREFORE, Plaintiffs, Chiyoda Gravure Co., Ltd. and Chiyoda Express Co., Ltd., respectfully request that this Court enter a temporary restraining order, preliminary injunction, and permanent injunction as follows:

1) Preventing John Sato and Chiyoda America from selling, transferring, disposing of or in any form encumbering the shares of Chiyoda America pending the final

-8-

resolution on the merits of ownership of the shares of Chiyoda America in the Japanese Litigation and the Belgian Litigation, and further providing a penalty of $1,000,000 for violating this provision;

2) Preventing John Sato and Chiyoda America from selling, transferring, disposing of or in any form encumbering any of the assets of Chiyoda America pending the final resolution on the merits of ownership of the shares of Chiyoda America in the Japanese Litigation and the Belgian Litigation;

3) Preserving Chiyoda America's corporate existence, and preventing Chiyoda America from merging into or consolidating with any other entity;

4) Preventing Chiyoda America from conducting business other than in the ordinary course of business;

5) Preventing Chiyoda America from liquidating or dissolving, or from filing any bankruptcy petition or making an assignment for the benefit of creditors;

6) Appointing a three person management team comprised of i) Hiroshi Mizumoto, a current Director and Vice President of Chiyoda America; ii) Mr. Hiroyoshi Sato, Chiyoda Gravure's President; and iii) a court appointed director, who would act in the event of any disagreement between the other two directors, Hiroshi Mizumoto and Hiroyoshi Sato, to manage, control and conduct all the day-to-day affairs and operations of Chiyoda America, pending the final resolution on the merits of ownership of the shares of Chiyoda America in the Japanese Litigation and the Belgian Litigation; and further providing that this management team have all the powers necessary to manage and control the affairs of Chiyoda America;

    7) Preventing John Sato and Chiyoda America from organizing or convening any other competing meetings of the Board of Directors of Chiyoda America apart from the meetings organized or convened by the three person management team; and,

    8) Suspending the payment of any salary and all bonuses, if applicable, from Chiyoda America to John Sato pending the final resolution on the merits of ownership of the shares of Chiyoda America in the Japanese Litigation or the Belgian Litigation; or alternatively, maintaining John Sato's salary and all bonuses, if applicable, in an interest bearing escrow account held by this Court pending final resolution on the merits of ownership of the shares of Chiyoda America in the Japanese Litigation or the Belgian Litigation.

Dated: January 25, 2006  Respectfully submitted,

Richard H. Wix (PA 07274)  By: /s/ Richard H. Wix
Kathryn L. Wix (PA 92944)  One of the Attorneys for Plaintiff,
Wix, Wenger & Weidner  Chiyoda Gravure Co., Ltd. And
4705 Duke St.  Chiyoda Express Co., Ltd.
Harrisburg, PA 17109
Phone: +1 717 652 8455
Fax: +1 717 652 6290
Email: rhwix@hotmail.com
kwix75@hotmail.com

Co-Counsel:
Michael J. Garvey (3122948)  By: [signature]
David G. Wix (6226391)  One of the Attorneys for Plaintiff,
Baker & McKenzie LLP  Chiyoda Gravure Co., Ltd. And
One Prudential Plaza, Suite 3500  Chiyoda Express Co., Ltd.
130 E. Randolph Drive
Chicago, IL 60601
Phone: +1 312 861 8000
Fax: +1 312 861 2899
Email: michael.j.garvey@bakernet.com
david.g.wix@bakernet.com

CHIDMS1/593073.7

-11-